Hon. William C. Hennessy Chairman NYS Disaster Preparedness Commission
You have asked whether Article 2-B of the Executive Law, "State and Local Natural and Man-Made Disaster Preparedness", or any other statute, provides immunity from liability for local chief executives, officers and employees when operating within the scope of their duties in the case of a local state of emergency.
Article 2-B is designed to coordinate state and local government actions to cope with disasters. Pursuant to this statute, county and city chief executives are authorized to develop and prepare disaster preparedness programs. In the event of an actual or threatened disaster, local chief executives may declare a local state of emergency, promulgate emergency orders, utilize local resources and activate civil defense forces to cope with the disaster.
Article 2-B provides for the integration of disaster preparedness functions with the existing civil defense program, which is governed by the State Defense Emergency Act (Unconsolidated Laws, Title 26, ch 1). This integration of disaster preparedness with civil defense is relevant in determining the extent of immunity that is available to local chief executives, officers and employees when operating within the scope of their duties as mandated by Article 2-B.
Article 2-B addresses the issue of immunity from liability in several provisions. Section 26 (3) provides that local chief executives or elected or appointed county, city, town or village officials are not to be held responsible for the acts or omissions of disaster preparedness forces or civil defense forces when performing disaster assistance. However, the statute does not define the phrase "disaster preparedness forces". Sections 29-b (2) (h) and (3) (h) provide that the chief executive officer of a city or county, or any elected or appointed town or village official to whom the county chief executive has delegated supervisory power, is not to be held responsible for the acts or omissions of civil defense forces when performing disaster assistance. Therefore, local chief executives and officials are immune from liability where they have complied with the requirements of Article 2-B and the liability is predicated upon the acts or omissions of either disaster preparedness forces or civil defense forces.
Sections 29-b (2) (e) and (3) (e) provide that when county and city civil defense forces are performing disaster assistance, they possess the same immunities that they possess when performing their duties in a civil defense drill or training exercise.
The State Defense Emergency Act governs the liability of individuals involved in civil defense. Section 9113 provides:
 "1. The state, any political subdivision, municipal or volunteer agency, * * * or any agency, member, agent or representative of any of them, or any individual * * * in good faith carrying out, complying with or attempting to comply with any law, any rule, regulation or order duly promulgated or issued pursuant to this act, * * * relating to civil defense, including but not limited to activities pursuant thereto, in preparation for anticipated attack, during attack, or following attack or false warning thereof, or in connection with an authorized drill or test, shall not be liable for any injury or death to persons or damage to property as the result thereof."
Section 9113 has been interpreted to provide immunity if there is strict compliance with the State Defense Emergency Act and any rules or orders required and issued pursuant to the Act (1954 Op Atty Gen 135). This provision restores the immunity of the State and its municipalities so far as functions under the State Defense Emergency Act are concerned (1951 Op Atty Gen 116, 121). In Bundy v Peugot, 222 N.Y.S.2d 576 (City Court of Buffalo, 1961), a county deputy director of civil defense was found immune from liability even though he had negligently collided with another vehicle when responding to a fire. Since he was responding to the fire pursuant to a local civil defense plan, the Court found section 9113 to be applicable and granted judgment in favor of the deputy director.
Since section 9113 grants immunity to any individual who in good faith carries out an authorized civil defense plan, drill or test, civil defense forces are also immune from liability for good faith efforts to carry out their duties under Article 2-B. Therefore, local chief executives, officers or employees who are part of a civil defense force are immune from liability when performing disaster assistance.
Employees who are not part of county or city civil defense forces are not specifically immune from liability under the provisions of Article 2-B. However, these employees may be held harmless and entitled to indemnification under applicable sections of the General Municipal Law.
The General Municipal Law provides that every subdivision of the government other than the City of New York is liable and shall assume the liability for: (1) Duly appointed persons who negligently operate a municipally-owned vehicle or other facility of transportation within the State if the person was acting in discharge of his duties and within the scope of his employment (section 50-b); (2) Duly appointed policemen and firemen who negligently operate a vehicle within the municipality or fire district if at the time of the accident they were acting in the performance of their duties and within the scope of their employment (section 50-c); (3) Certain physicians, resident physicians, interns, dentists, podiatrists and optometrists who commit malpractice when rendering services to a person in a public institution or home care service maintained by a public institution which is maintained in whole or in part by the municipal corporation (section 50-d); and (4) Police officers who commit torts in the performance of their duties and within the scope of their employment (section 50-j).
Section 50-j (3) also provides that a city shall indemnify police and correction officers for a claim filed in a court of the United States from damages arising from an act or omission within the scope of employment and in the discharge of duties which was not in violation of any rule or regulation of the department or any statute or governing case law of the State or the United States at the time of the alleged incident. Sections 50-k, 50-l and 50-m provide for the indemnification of certain employees of the City of New York if the provisions of those sections are complied with.
Therefore, if an employee or officer of a municipality commits a tortious act when complying with his duties as mandated by Article 2-B and that act is not covered by the immunity provisions discussed above, he will nevertheless be indemnified in any of the situations enumerated in the General Municipal Law, §§ 50 (b)-(m).
Article 2-B does not appear to grant immunity to chief executives and officers for their own actions or omissions which are not explicitly within the civil defense function. (Sections 26 (3) and 29-b (2) (h) and (3) (h) grant immunity only to local chief executives and officers for the acts or omissions of others.) Article 2-B also does not appear to grant immunity to employees where the employees are not members of a county or city civil defense force.
Nonetheless, local chief executives, officers and employees may have qualified immunity while performing their duties pursuant to Article 2-B.
The State and its political subdivisions have waived sovereign immunity from tort liability to the extent that individuals and corporations are subject to liability for tortious acts (Court of Claims Act, § 8;Bernadine v City of New York, 294 N.Y. 356 [1945]). Sovereign immunity continues as to those acts that individuals and corporations cannot undertake — that is, acts that only a government can take. In Weissv Fote, 7 N.Y.2d 579, 585 (1960), the Court stated:
 "Lawfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability. It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-by-day operations of government * * * but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question * * *. To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts."
The Court in Weiss held that absent some indication that due care was not exercised in the preparation of the plan or that no reasonable official could have adopted it, it would not allow a jury to determine the reasonableness of the plan (id., at 586).
Under the rationale of Weiss v Fote, local chief executives, officers and employees may raise the defense of governmental immunity if their actions involve expert governmental planning decisions and due care is exercised in the preparation of the plan. However, no general rule of governmental immunity can be articulated which would be applicable to all situations that may arise under Article 2-B.
We conclude that under Article 2-B: (a) local chief executives and officers are immune from liability based on the acts or omissions of disaster preparedness forces or civil defense forces and (b) local chief executives, officers and employees are immune from liability when performing disaster assistance pursuant to a civil defense plan, drill or test. In those situations where the immunity provisions of Article 2-B do not apply, (a) employees may be entitled to indemnification under applicable provisions of the General Municipal Law; and (b) executives, officers and employees may be able to raise the defense of governmental immunity.